UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARMAINE LATHAM, <br><br> Plaintiff, <br><br> v. <br><br> PATRICK R. DONAHUE, Postmaster General, United States Postal Service, <br><br> Defendant. | No. 10 C 8149 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charmaine Latham ("Latham") filed this employment discrimination claim against her employer, the United Service Postal Service ("USPS"). She seeks damages for discrimination and creation of a hostile work environment in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq* ("Rehabilitation Act"), as well as for retaliation for engaging in protective activity under 42 U.S.C. § 2000e *et seq* ("Title VII"). Defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56(c). For the following reasons, Defendant's motion is granted.

## BACKGROUND

Plaintiff Latham began her employment at the USPS in 1974. Latham alleges that she was subject to several incidents of disparate treatment based on her bipolar disorder. She claims that this disparate treatment constituted both discrimination because of a mental disability and retaliation for her earlier complaints to Defendant's Equal Employment Opportunity office ("EEO"). In addition, Latham alleges that certain actions and statements of her supervisors and co-worker Beatrice Howard ("Howard") created a hostile work environment.

Defendant has moved for summary judgment, arguing that: (1) Latham was not disabled within the meaning of the Rehabilitation Act because her mental impairment did not prohibit her from carrying out a major life function; (2) Latham suffered no adverse employment action because transferring her to a different route does not amount to materially altering her employment conditions; and (3) Latham's allegations regarding the hostile work environment claim fail to establish a connection between her mental disability and her co-worker's hostile treatment.

## DISCUSSION

### I.  Summary Judgment Standard

A motion for summary judgment will be granted only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

I consider the evidence and draw all reasonable inferences in favor of the nonmoving party. *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 658 (7th Cir. 2001), cert. denied, 537 U.S. 819 (2002). I will accept the non-moving party's version of any disputed fact, however, only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## II. Rehabilitation Act Claims

The Rehabilitation Act requires federal agencies to accommodate disabled employees and prohibits discrimination based on disability. *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005) (citing 29 U.S.C. § 791(b)). The standards applicable to claims brought under the Americans with Disabilities Act ("ADA") also apply to Rehabilitation Act claims. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). A plaintiff seeking to prove discrimination against a federal employer under the Rehabilitation Act must establish a prima facie case for discrimination. Just as with cases brought under the ADA, Plaintiff must show that: (1) she is disabled or regarded as disabled under the definition of the Act; (2) she is otherwise qualified to perform the essential functions of her position; and (3) she suffered an adverse employment decision because of her disability. *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002).

### A. Latham's Claimed Disability

To establish a *prima facie* case under the Rehabilitation Act, Latham must prove, among other things, that she falls within the ADA's statutory definition of "disabled." *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). In its motion for summary judgment, Defendant argues that Latham's claims fail because she is not disabled within the meaning of the statute.

3

For purposes of the Rehabilitation Act, a person is "disabled" if he or she "has a physical or mental impairment which substantially limits one or more of such person's major life activities." *Id.* at 724–25; 29 U.S.C. § 706(8)(B). Major life activities are defined as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1454 (7th Cir. 1995); 42 U.S.C. § 12102(2)(A). "'Substantially limits' is not meant to be a demanding standard," and "an impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1) (2012).

Latham is disabled for purposes of the Rehabilitation Act. Plaintiff experiences difficulty with the major life activity of sleeping, being unable to sleep for four to five days in a row at times. Her bipolar medication also limits her in her ability to work, as it makes her nauseous and groggy, requiring her to take breaks or leaves. Plaintiff has supported the allegations regarding her disability with doctors' letters, in addition to her own testimony and affidavits. These facts are sufficient to show that Plaintiff was substantially limited in performing major life activities like sleeping and working, "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). I find that Plaintiff Latham is disabled for purposes of her claims in this case.[1]

### B. Adverse Employment Action

Latham's discrimination claim fails because she has not shown that she suffered an adverse employment action within the meaning of the statute. Latham claims to have suffered adverse employment actions when she was transferred out of the Sears Tower and into an unfamiliar route from May 21 to June 23, 2007, and again from July 2008 to September 2009.

---

[1] That Plaintiff satisfies the second element of her *prima facie* case that she was otherwise qualified for her position is not in dispute.

Plaintiff claims that the new routes were more physically intensive and that she lost ten hours of overtime per week, which she had often received at the Sears Tower route.

Latham also claims to have suffered an adverse employment action when her continuation of pay due to her back injury was delayed for over a year. Plaintiff sprained the thoracic region of her back in November 2008. As a result of the injury, Plaintiff was entitled to 45 days of pay. The continuation of pay was delayed until Plaintiff finally received it in early 2010. Latham alleges that her supervisor Wilkins' failure to submit information for the continuation of pay was intentional, and that the delay in payment was an adverse employment action. In my view, neither the route transfer nor the delay in receiving continuation of pay constitutes an adverse employment action for purposes of a discrimination claim.

While the Seventh Circuit takes a broad view with regard to what rises to the level of a materially adverse employment action, *Maclin v. SBC Ameritech*, 520 F.3d 781, 787 (7th Cir. 2008), a mere inconvenience or a minor change in working conditions does not qualify. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007).

A lateral transfer that does not involve a demotion in form or substance, such as Latham's, cannot rise to the level of a materially adverse employment action. *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996); *see also Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir. 1994) (while a lateral transfer may be personally humiliating, it is insufficient, absent other evidence, to establish a materially adverse employment action); *Crady v. Liberty Nat. Bank & Trust Co. of Indiana*, 993 F.2d 132, 135–36 (7th Cir. 1993) (no adverse employment action when the branch manager of a bank became a collections officer at another branch while retaining the same salary and benefits).

For example, the plaintiff in *Williams*, who was a salesperson, was transferred to a

division where he had to learn about new products, and his sales commission was temporarily reduced as a result. *Williams*, 85 F.3d at 274. While noting that transfers that were essentially demotions, constructive discharge, or a dramatic downward shift in skill level were materially adverse employment actions, the court held that the plaintiff's transfer only resulted in minor changes in working conditions and income which did not amount to an adverse employment action. *Id*.

The changes caused by Latham's transfers were minor and did not rise to the level of an adverse employment action. Plaintiff was not "demoted" to a lower position, as her responsibilities remained substantially the same before and after the transfers. And Plaintiff has provided no evidence regarding the alleged difficulties of the new routes. The mere fact that Latham would have preferred to stay on the Sears Tower route does not mean that her transfer to a different route was an adverse employment action.

Latham may have indeed found the new routes more physically demanding, and she may have preferred to stay on the Sears Tower route because she was familiar with it or because it was, in some respects, easier. Regardless, these are precisely the type of subjective preferences which may be disregarded without rising to the level of an adverse employment action. Plaintiff's allegation that the transfer subjected her to humiliation not only lacks support by any objective evidence, but also fails to rise beyond Plaintiff's subjective preference. As the Seventh Circuit has noted, any job transfer will, by definition, result in *some* changes to an employee's job responsibilities and work conditions. *O'Neal v. City of Chicago*, 392 F.3d 909, 913 (7th Cir. 2004). Thus, to sustain a federal employment discrimination suit, a plaintiff must show something more than the ordinary difficulties associated with a job transfer. *Id*. Latham has not done so.

Latham's alleged loss of overtime does not change the analysis. It is true that a reduction in hours could be an adverse action giving rise to liability. *See O'Neal*, 392 F.3d at 911–12. However, deprivation of a discretionary monetary benefit cannot amount to an adverse employment action for a discrimination claim. *Tyler v. Ispat Inland Inc.* 245 F.3d 969, 972 (7th Cir. 2001). To the contrary, the Seventh Circuit has held that when an employee's overtime was given at the discretion of her supervisor, the temporary loss of overtime did not constitute an adverse employment action. *Jordan v. Chertoff*, 224 F. App'x 499, 502 (7th Cir. 2006).

Similarly, Latham's overtime was given at the discretion of her supervisor, and she was not forever prevented from working overtime. Plaintiff has not shown that she was *entitled* to daily overtime on the Sears Tower route, or that it was impossible to receive overtime on the new routes she was assigned to. In fact, Latham's own testimony states that her hours were given at the discretion of her supervisor even at the Sears Tower route. She has provided no evidence that she asked for overtime work at the new route and was denied. As Plaintiff has not shown that she was entitled to overtime work on the Sears Tower route or that she had any overtime opportunity withheld from her on the new routes, her alleged loss of overtime was not an adverse employment action.

The delay in receiving the continuation of pay was not an adverse employment action under the statute because Plaintiff has failed to show that it was an action taken by her employer. The Department of Labor was responsible for deciding whether Latham received her continuation of pay. Plaintiff speculates, however, that the continuation of pay was delayed because her supervisor Wilkins intentionally did not submit the necessary information. In support of this conclusion, she provides no other evidence than her own letter stating that "Ms. Wilkins has refused to comply with a 45 days continuation of pay order awarded to me by the

7

Department of Labor." Such a statement is wholly inadequate to make out a prima facie case of discrimination. *See Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1057 (7th Cir. 1994) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.") (internal quotations omitted). Additionally, although Plaintiff alleged that the delay was caused by Wilkins, she also stated in her deposition testimony that she did not know who was responsible for the delay. As she cannot establish that it was her employer that caused such delay, the delay cannot qualify as an adverse employment action.

Because Plaintiff has not demonstrated that she suffered an adverse employment action within the meaning of the statute, I need not take up the question of discriminatory motive.

### III. The Hostile Work Environment Claim

Latham has also brought a hostile work environment claim. Plaintiff's hostile work environment claim is largely based on her interactions with her co-worker Howard. Latham claims that Howard made hostile statements about her, snatched items from her hands, and discussed her mental condition with other employees and customers on several occasions in 2007 and 2008.

The USPS held a meeting on May 17, 2007, to discuss the conflict between Plaintiff and Howard, during which the USPS decided to transfer Plaintiff to a different route. Plaintiff was placed back on the Sears Towers route shortly after the first transfer. The conflict between Plaintiff and Howard resumed after Plaintiff returned to the Sears Tower route, and in April 2008, both Plaintiff and Howard were put off the clock following an incident in which Plaintiff called the Postal Police about a security concern. Plaintiff was on leave due to her bipolar condition from April 24 to July 20, 2008. When Plaintiff returned from leave on July 31, 2008, a meeting was held between Wilkins, Howard, Plaintiff, a supervisor and a union steward. It was

8

decided at the meeting that Plaintiff and Howard could not work together. Howard would be put on a 7-day suspension, and Plaintiff was transferred to a different route.

The Seventh Circuit has not expressly decided whether a hostile work environment claim exists under the Rehabilitation Act or the ADA. *Mannie*, 394 F.3d at 982. However, the Circuit has assumed the existence of such claims where resolution of the issue has not been necessary. *Id*. (citing *Conley v. Village of Bedford Park,* 215 F.3d 703, 712–13 (7th Cir. 2000)). It is further assumed that the standards for proving such a hostile work environment claim under the Rehabilitation Act would mirror those under Title VII. *Id*. (citing *Silk v. City of Chicago*, 194 F.3d 788, 804 (7th Cir. 1999)).

A hostile work environment exists where an employee experiences harassment that is "so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Conley*, 215 F.3d at 713 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)). A plaintiff establishes an alteration in the terms and conditions of employment by demonstrating either a tangible employment action, such as discharge or demotion, or a non-tangible action, such as discriminatory conduct that is so severe or pervasive as to create an "abusive" working environment. *Silk*, 194 F.3d at 804–05. To establish the severity or pervasiveness of the conduct, he must address such factors as the frequency, severity and threatening or humiliating nature of the discriminatory conduct and whether it unreasonably interferes with his work performance. *Id*. Moreover, the abusiveness of the working environment must qualify both objectively (that is, it must be an environment that a reasonable person would find hostile or abusive) and subjectively (that is, this employee subjectively perceived it to be abusive). *Id*.

The plaintiff in *Silk* was a sergeant in the Chicago Police Department, who suffered from

severe sleep apnea and was limited to working only the day shift as a result. *Silk*, 194 F.3d at 795. Silk claimed that, as a result of resentment and jealousy among fellow officers that he only worked the day shift, he was subjected to a pattern of harassment that included: (1) verbal abuse (Silk was referred to by supervisors as a "useless piece of [vulgarity]," a "medical abuser," and a "limited duty phony," and his condition was referred to in roll call as his "[vulgarity] medical problem"); (2) threats of physical violence (his co-worker told him "it won't take much to have me knock you on your [vulgarity] right now," and his supervisor warned him there might be a bomb under his car); (3) lowered performance ratings; (4) compelled loss of his night job teaching classes at Chicago State University, and (5) administrative harassment (loss of days of leave, not being given supervisory duties, and being ridiculed). *Id*. at 796-97. Taking the cumulative effect of all of Silk's claims into account, the Seventh Circuit held that he did not meet the burden necessary to avoid summary judgment on his hostile work environment claim because the alleged actions did not alter the conditions of his employment.

Similarly, in *Mannie v. Potter*, the plaintiff's supervisors had allegedly spread information about her mental disability, referring to her as "crazy." *Mannie*, 394 F.3d at 981. Mannie also claimed that someone had once placed two letters in her locker at work to harass her, and that a woman had hugged her in an effort to smell her body odor. *Id*. Comparing the case to *Silk*, the Seventh Circuit affirmed the district court's holding that Mannie could not state a hostile work environment claim because the conduct did not materially alter the conditions of her employment. *Id*. at 984.

Plaintiff's hostile environment claim fails for the same reasons. The alleged hostile conduct Plaintiff suffered is in fact similar to those in *Silk* and *Mannie*, although the hostile conduct in this case came mainly from one individual, unlike *Silk* and *Mannie*. Plaintiff

10

experienced direct verbal attacks and threats of violence. However, like the plaintiffs in Silk and Mannie, Plaintiff has not submitted any evidence that could establish that she experienced a tangible employment action or that she was unable to perform her job because of the conduct of her supervisors and co-workers. *See Mannie*, 394 F.3d at 984. In any event, the USPS attempted to resolve the ongoing conflict between Plaintiff and Howard by separating the two of them, as well as putting Howard on a 7-day suspension. While I am not unsympathetic to Plaintiff, the evidence she has presented does not meet the standard in this Circuit for hostile work environment claims.

## IV.     The Retaliation Claim

Title VII makes it unlawful for an employer to discriminate against any of his or her employees or applicants for employment because he has opposed any practice made an unlawful employment practice by Title VII. 42 U.S.C. § 2000e–3(a). This type of discrimination is commonly called retaliation. A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006).

### A. Plaintiff's Retaliation Claim Under the Direct Method

Under the direct method, a plaintiff must offer evidence: (1) that she engaged in protected activity, (2) that she was subjected to an adverse employment action, and (3) that there was a causal link between the protected activity and the employment action. *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 642 (7th Cir. 2013). The parties here do not dispute that Latham engaged in protected activity when she filed EEO complaints. However, Latham's claim cannot proceed under the direct method because she has not satisfied the second and third elements.

In her Response Brief, Plaintiff principally relies on her transfer to a different route to

show that she suffered an adverse employment action. Latham's transfer does not constitute an adverse employment action for purposes of a retaliation claim. While the category of materially adverse actions for retaliation claims is broader than the adverse employment actions that sustain a discrimination claim, the adverse action must still be material. *See Porter v. City of Chicago*, 700 F.3d 944, 957 (7th Cir. 2012). In *Porter*, for example, the plaintiff alleged she was transferred to a "Friday/Sunday days-off group" in retaliation for seeking accommodation for her religious beliefs. *Id*. Although the court recognized that being assigned to that group was not the accommodation Porter sought, the court also found that it would not dissuade a reasonable worker from seeking accommodation. *Id*.

Likewise, Latham's transfer does not rise to the level of being materially adverse. In her Response Brief, Plaintiff points to her supervisor Edmonds' statement that she was being transferred because Plaintiff had made complaints about Howard as direct evidence of retaliation. But in the same paragraph, Plaintiff also admits that she had made an accommodation request shortly before Edmonds made this statement. Being transferred to a different and unfamiliar route may not have been the accommodation Plaintiff wanted. Nevertheless, it was a reasonable response to her complaint that she did not wish to work with Howard and her request that the USPS take action in this regard. A refusal to provide Plaintiff's preferred accommodation is not an adverse employment action, even for purposes of retaliation claims.

The other allegedly adverse employment action on which Plaintiff relies in her briefing is being told on certain occasions that she could not report to work.[2] While this allegation likely satisfies the second element under the direct method, it does not satisfy the third because Plaintiff does not show a causal link between the adverse action and her protected activity.

---

[2] Plaintiff lists other allegedly adverse employment actions in her complaint, but appears to have abandoned them in her briefing. In any event, in my view, they similarly are not materially adverse.

12

Plaintiff may demonstrate this causal link using direct or indirect evidence. *See Hobgood*, 731 F.3d at 643. Direct evidence would be something akin to an admission by the employer that it took a certain action because of the employee's protected activity. *See id*. In this context, it would mean the USPS's admission that Latham was not allowed to report to work because she complained that she was being illegally discriminated. No such evidence has been provided.

Latham could also prove her case by indirect evidence. To do so, Latham must create a "convincing mosaic" of circumstantial evidence of retaliation. *See id*. A convincing mosaic includes evidence from which an inference of retaliatory intent could be drawn, including: "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id*. at 643–44. Presenting only an isolated "bit" or "piece," such as suspicious timing alone, does not suffice. *See id*. at 644. Similarly, ambiguous or isolated comments that stand alone are insufficient. *Id*.

Plaintiff has not created a sufficiently convincing mosaic of retaliation. Plaintiff presents no other evidence than her own testimony to establish that the employer's explanation was false. Latham also provides several other conclusory statements, including that Howard was irrationally favored, her supervisor Wilkins obstructed the continuation of pay process and "targeted Plaintiff by putting the station up for bid in a manner that would ensure Plaintiff could not return to her route." Given that Plaintiff has not provided *factual* support or evidence other than her own testimony for these *conclusions*, these allegations are simply not sufficient to meet her burden to survive summary judgment. *See Payne*, 337 F.3d at 773 (conclusory allegations unsupported by specific facts are not sufficient to survive summary judgment); *see also Sears,*

*Roebuck & Co.*, 233 F.3d at 437 (a nonmoving party must present definite, competence evidence to rebut summary judgment motion).

**B. Plaintiff's Retaliation Claim Under the Indirect Method**

Alternatively, Plaintiff may also prove her case by the *indirect* method. To do so, Plaintiff must first establish a prima facie case of retaliation by showing that (1) she engaged in activity protected by law; (2) she met her employer's legitimate expectations, i.e., she was performing his job satisfactorily; (3) she suffered a materially adverse action; and (4) she was treated less favorably than a similarly situated employee who did not engage in the activity protected by law. *Hobgood*, 731 F.3d at 641. If the employee has evidence in support of each of these four elements of the prima facie case, the burden shifts to the employer to articulate a legally permissible reason for the adverse employment action. *Id*. If the employer does so, the analysis shifts back to the employee, who then has to show that the employer's stated reason is false, and that the real reason was unlawful. *Id*.

The first and second elements of the indirect method are not contested here. However, Latham's retaliation claim cannot proceed under the indirect method because she has not shown that she suffered a materially adverse employment action, and she has failed to point to a similarly situated employee who was treated more favorably.

Plaintiff has not suffered adverse employment actions for the reasons stated above. Even assuming that Plaintiff did suffer adverse employment actions, her retaliation claim still cannot proceed because she has not identified a similarly situated employee who was treated more favorably.

Latham points only to Howard as a similarly situated employee. But it is not clear that Howard was treated more favorably than Latham. Following the altercation between Plaintiff

and Howard, Plaintiff was placed on a different route, while Howard received a seven-day suspension. Plaintiff has not met her burden of establishing a *prima facie* case of retaliation.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is granted.


ENTER:

James B. Zagel
United States District Judge

DATE: May 9, 2014